## George C. Renneker Company, Appellee, v. South Park Commissioners, Appellant.

## Gen. No. 31,759.

ELECTIONS—*who liable for cost of printing ballots.* The South Park Commissioners are not liable for the cost of printing ballots for submitting, in a general election in the City of Chicago, to the voters in the park district a proposition to issue bonds by the commissioners, either under a contract between the printer and the Board of Election Commissioners, made pursuant to notice from the Park Commissioners, or under the amendments to Cahill's St. ch. 46, ¶ 362, since the amendment of 1911 refers to the election of township officers only, and the amendment of 1917 applies only. when the election is for the single purpose of submitting a proposition for the park commissioners; and it seems that the city is liable under Cahill's St. ch. 46, ¶ 259.

Appeal by defendant from the Circuit Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1927. Reversed. Opinion filed October 4, 1927. Rehearing denied October 17, 1927.

ELMER J. SCHNACKENBERG & WILLIAM J. CORRIGAN, for appellant.

JOHN F. TYRELL, for appellee; CORNELIUS J. HARRINGTON, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This is an action in assumpsit brought against the South Park Commissioners, the City of Chicago and the Board of Election Commissioners of the City of Chicago to recover the cost of printing certain specimen and special ballots for submitting to the voters in the south park district a proposition to issue bonds for the South Park Commissioners. Said ballots were printed for and used at the general election held in the City of Chicago on November 4, 1924.

The declaration contains a special count and the common counts. The special count is predicated upon a contract entered into between the Board of Election

Commissioners and plaintiff. It avers that said board, pursuant to notice from the South Park Commissioners to submit said proposition, advertised for bids for specimen and official ballots containing said proposition, and that plaintiff's bid therefor at the contract price of $6,945.60 was accepted. From a judgment against the Park Commissioners for that sum this appeal is taken.

The bill of exceptions states that the several parties were represented by attorneys and the case heard before the court "upon the pleadings heretofore filed herein"; that at the close of plaintiff's testimony the attorney for the South Park Commissioners moved the court to find the issues for appellant; that the motion was overruled, a finding for the sum claimed made against appellant; that "the demurrer of the City and the Board of Election Commissioners is sustained and the demurrer of the South Park Commissioners is overruled"; and that appellant's motions for a new trial and in arrest of judgment were overruled.

This is a praecipe record. It shows no pleadings whatever on the part of the city or the Board of Election Commissioners, and no order of the court directly affecting those defendants. The demurrers referred to in the bill of exceptions being passed on at the close of the evidence appear to be demurrers to the evidence. But whether so or not, and whether or not the city and the Board of Election Commissioners have been eliminated from the case (which the record does not show), we think the proof was insufficient to sustain a judgment against the South Park Commissioners.

We think the expense of printing said ballots was an expense incidental to the duty of said board to conduct said election (Cahill's St. ch. 46, ¶ 239), and that the question of liability therefor was decided in *Bolles v. Prince*, 250 Ill. 36. In that case it was sought to compel the board of town auditors of the Town of

Danville to pay the expenses of conducting the registration and election in that part of the City of Danville lying within the Town of Danville. The City of Danville adopted the Election Act and the election was under the supervision of the election commissioners of that city. Referring to Article VII, section 1 of the General Election Act (Cahill's St. ch. 46, ¶ 358), the court said: "The city is required to pay all expenses incurred by, the Board of Election Commissioners." And referring to that case and such construction in *Johnson v. County of Winnebago,* 256 Ill. 276, the court said: "We there held that the city shall be liable for all miscellaneous expenses incurred by the board of election commissioners." In fact, the language of the section itself, after making provisions for the salaries of the election commissioners and the chief clerk and the assistant chief clerk, reads as follows: "All expenses incurred by such board of election commissioners shall be paid by such city." That the preparation and printing of ballots necessary for use at such election was an expense incident thereto for which the city is liable can hardly be open to question. Section 5, Article II of said Election Law (Cahill's St. ch. 46, ¶ 259) provides:

"Such board shall provide all necessary ballot boxes and all registry books, poll books, tally sheets, blanks and stationery of every description, with printed headings and certificates, necessary and proper for the registry of voters and the conduct of such election *and for every incidental purpose connected therewith.*" And that such a proposition may be submitted at a general, as well as a special election, needs no discussion.

It is urged by appellee that as section 5 of said Article VII (Cahill's St. ch. 46, ¶ 362) was amended in 1911, following the decision in the *Bolles* case, making it the duty of the election commissioners in cities lying in two or more townships to apportion the ex-

penses and salaries connected with the registration and election "at all township elections, general or special, held for the election of township officers *only* for any township or townships of which said city may be a part," and because in 1917 said section 5 of Article VII was further amended by adding the following paragraph: "At all elections held for the purpose * * * of voting upon a proposition or propositions submitted by such board *and for no other purpose,* such board shall pay the expenses of such election," there was manifested an intention of the legislature to modify the rule in the *Bolles* case.

While we see no application of the amendment of 1911 referred to, nevertheless counsel seemingly fail to recognize that said amendment relates to elections "held for the election of township officers *only,*" and that the amendment of 1917 making the park board liable for the expense of submitting a proposition to the voters is only when the election is for that single purpose. Liability being thus restricted these amendments can have no application in case of a general election such as was held on November 4, 1924, at which said ballots were used. The contract relied on was for printing, not only of said specimen and official ballots for submission of the proposition of the South Park Commissioners, but ballots for other propositions to be voted upon by the entire electorate of the city as well as ballots for county, State and national officers. The contract was evidently made pursuant to the board's duty to conduct said general election, the expenses of which are chargeable, under the Election Act, to the city.

Hence there being no liability on the part of the South Park Commissioners for the printing of such ballots, either under said contract or the law, the judgment is reversed.

*Reversed.*

GRIDLEY and WELLS, JJ., concur.