PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* THE PORTO RICO TELEPHONE COMPANY, Defendant and Appellant.

No. 3928.   Argued December 19, 1929—Decided February 12, 1930.

*Jaime Sifre, F. Prieto* and *Diego O. Marrero,* for appellant. *R. A. Gómez,* for appellee.

Mʀ. Jᴜꜱᴛɪᴄᴇ Tᴇxɪᴅᴏʀ delivered the opinion of the court.

The information in the present case reads as follows:

"The prosecuting attorney charges the corporation The Porto Rico Telephone Company with the crime defined by section 6 and penalized by section 8 of the Act entitled 'An Act Relative to Labor Contracts' enacted by the Legislature of Porto Rico on March 31, 1919, a misdemeanor committed in the following manner:

"That on one of the days of the month of February, 1928, in San Juan, which forms a part of the judicial district of the same name, the defendant corporation, The Porto Rico Telephone Company, then and there availed itself of the labor of Angel Irizarry in consideration of the payment to him of semi-monthly wages and, without having made any advance to him, it deducted the sum of two dollars and eighty cents from the semi-monthly wages earned by him, to be paid to other persons.

"This fact is contrary to the law for such case provided and to the peace and dignity of The People of Porto Rico."

The defendant filed a demurrer based on two grounds. The court overruled the demurrer and, after a trial, found

the defendant guilty of a violation of section 6 of Act No. 91 of 1919 (Acts of 1917 (3), p. 11), relative to labor contracts, and sentenced it to pay a fine of $25. The defendant has appealed from that judgment.

In the brief on appeal several errors are assigned, which we will consider in their order.

The first assignment reads:

"1. The district court erred in overruling the demurrer to the information interposed by the defendant-appellant."

The first ground of demurrer was that the information does not state facts sufficient to constitute a public offense.

The appellant maintains:

(*a*) That no labor contract has been alleged.

(*b*) That it has not been alleged that Irizarry was a workman in the employ of the defendant.

The argument on this error might be answered with the words of the district judge, in deciding the demurrer:

"The information states: 'That the defendant availed itself of the labor of Angel Irizarry in consideration of the payment to him of semi-monthly wages and, without having made any advance to him, it deducted from his semi-monthly wages a certain sum of money.' These allegations clearly, specifically and sufficiently set forth the contractual relation between Irizarry and the defendant, namely, that of workman and employer; also the fact that no advance had been made to him by the latter, and that part of his wages had been deducted by his employer. This is sufficient. . . ."

The undertaking (*prestación*) to perform services for the benefit of another, and the corresponding undertaking by the latter to pay wages therefor, are the essential elements in this kind of contracts. The laborer works, and the performance of his services furnishes consideration for the undertaking on the part of the employer to pay him wages, which undertaking is in turn the consideration that induces the laborer to work. The relation is clearly contractual and can not be otherwise. It involves correlative undertakings, which give rise to mutual rights and obligations. And as these are

regulated by law, there is no doubt that the resulting relation created by the parties falls within the field of contracts.

It is not necessary that the information should directly aver that "this or that contract existed." It is sufficient if—as was done in the present case—such a contract is necessarily shown by the facts set forth. It is neither the title of the cause nor the use of particular words that give life to the information. In all jurisdictions it is the avowed aspiration to prevent an exaggerated formulism from becoming a protective shield for the transgressor of the law.

The information in the case at bar follows substantially the form used in the case of *People* v. *P. R. American Tobacco Co.*, 30 P.R.R. 739, which was heard on appeal in this court. We do not mean to say, of course, that the form in question must be used exclusively, but only that it is correct, as it contains the necessary elements for charging an offense.

The appellant argues that it is not stated in the information that Irizarry was a workman in the employ of the defendant. But as it was alleged that the defendant availed itself of *the work* of Irizarry and paid him *wages,* we do not perceive the necessity for using precisely the word "workman," since the fact of the employment is clearly deduced from the averments made.

As to the second ground, it is urged with a great array of precedents that the law is unconstitutional and void as in conflict with the provisions of section 34 of the Organic Act of Porto Rico; and it is maintained that Act No. 91, under which this prosecution has been instituted, is unconstitutional as to that portion thereof which prescribes a penalty, of which no mention is made in the title.

We think that the most authoritative pronouncements on this point are to be found in the decisions cited in the brief of the appellee herein. They are: *Carter County* v. *Sinton,* 120 U. S. 517; *Jonesboro City* v. *Cairo & St. Louis Railroad,* 110 U. S. 192, and *Louisiana* v. *Pilsbury,* 105 U. S. 278. In the last of these cases (p. 289) the following declarations were

made with reference to the constitutional provision in force in many States of the Union, requiring that bills should embrace only one subject, which shall be expressed in its title:

"Its object is to prevent the practice, common in all legislative bodies where no such provision exists, of embracing in the same bill incongruous matters, having no relation to each other, or to be subject specified in the title, by which measures are often adopted without attracting attention, which, if noticed, would have been resisted and defeated. It thus serves to prevent surprise in legislation. But it was not intended to forbid the union of several different provisions in the same bill, if they are germane to the general subject indicated by its title."

. Among our own decisions are found *Rodríguez* v. *Porto Rico Railway, Light & Power Co.,* 30 P.R.R. 869, and *Roig* v. *Gallardo,* 39 P.R.R. 728. In the latter case citation is made of the decisions in *People* v. *Arrocho,* 34 P.R.R. 809, and *Trigo et al.* v. *Banco Territorial,* 36 P.R.R. 245.

In *Rodríguez* v. *Porto Rico Railway, Light & Power Co., supra,* the court said (p. 870):

"This title likewise clearly describes the purpose. The object of the act is to amend sections of law supposed to be in existence, and the body of the act does not purport to cover anything else but the said sections amended. We do not find in the cases cited by the appellee any decision which shows that any act is unconstitutional or void by reason of any similar title. The decisions rather tend to hold that when matters are incorporated into the act not suggested by the title, then the act is void. Galpin v. Chicago, L.R.A. 1917 B, 182, cites Lyons v. Police Pension Board, 99 N. E. 337, and our examination of that case is that the act was declared void because of its contents, rather than because of its title."

In the decision in *People* v. *Arrocho, supra,* the following quotation appears from 25 Ruling Case Law 844:

"An act is not unconstitutional because more than one object is contained therein where the objects are germane to the main subject, or they relate directly or indirectly to the main subject, and have a mutual connection with and are not foreign to the subject of such act,

or when the provisions of the act are of the same nature and come legitimately under one subject. 25 R.C.L. 844.''

The inclusion of a penalty in an act regulating labor contracts and containing provisions of a prohibitory nature which unquestionably require such sanction, can not render the act void, either partially or totally.

The penal clause in the act under consideration, not only is not in conflict with either the letter or the spirit of the act itself, but it can not be regarded as matter not germane to the subject announced by the title since it is a necessary adjunct thereto.

The second error is assigned by the appellant thus:

''The district court committed manifest error in finding that the evidence introduced by the prosecution was sufficient to convict the defendant under the provisions of section 6 in connection with section 8 of Act No. 91 relative to labor contracts, promulgated on March 31, 1919, by virtue of a judgment of this Hon. Court on the 11th of the said month and year.''

The able argument, advanced on this point by the learned counsel for the appellant, finds a complete answer in the law and the jurisprudence.

The statute provides:

''. . . . . No employer shall deduct for any reason part of the wages earned by laborers, to be paid to other persons, except as provided in this section.'' (Section 6 of Act No. 91 already cited.)

And this court has heretofore held:

''It clearly appears from the act that its principal purpose was to secure the wages of the laborer by preventing any combination whereby they might be diminished, and to that end section one thereof provides that the said wages shall be paid exclusively in legal tender and that only advances made *in cash* can be discounted, any stipulation that may be made as to payment in any other manner except in money to be void.

''In section 6 the Legislature again refers to the question of advances made *to the laborer* and positively prescribes that 'No employer shall deduct *for any reason* part of the wages earned by labor-

ers, *to be paid to other persons,* except as provided in this section.' The prohibition is absolute. A deduction can be made only when an advance has been made to the laborer. If a deduction is made in any other manner or for any other reason, it is a violation of the law which is penalized as a misdemeanor by section 8 of the act. The wages must be paid to the laborer and the advances, if any, liquidated with him. No deduction can be made to be paid to other persons, however good the motives may be therefor." *People* v. *Porto Rican American Tobacco Co.,* 30 P.R.R. 739, 740.

The regulations, which were introduced in evidence in the present case, would by themselves be sufficient to support the judgment of the district court. It is a fact that a part of the deduction made from the wages goes to other persons. As to the consent of the wage earners to the deduction, the transcript of the evidence in the case reproduces an assertion, which has more force than any argument that could be made. When witness Angel Irizarry was being examined, he was asked whether the deduction or deposit of 2 per cent from his wages had been made with his consent. He answered thus:

"A.—I agreed to nothing. The deduction was made from my wages.

"Q.—But did you not object?

"A.—I did not object because I would have been fired."

It appears from a reading of the regulations, which form a part of the evidence herein, that the contribution for the maintenance of the fund was obligatory (page 20 of the transcript).

It would seem advisable to transcribe below section V of the said regulations:

"Section V.—All employees shall contribute to the maintenance of the Fund with 2% of their annual salaries, which sum shall be deducted when effecting payment thereof, in the manner established."

The foregoing considerations dispose of all the points covered by the second assignment of error. The court acted within the law and with sound logic.

A third error is assigned by the appellant as follows:

"The district court committed manifest error in rendering a judgment contrary to law, since no prohibition appears clearly (or otherwise) expressed in Act No. 91 regarding labor contracts, which would prevent the defendant from maintaining jointly with its employees a mutual aid society like the benefit and retirement fund herein; and the judgment is also contrary to section 2 of our Organic Act and to the Fourteenth Amendment to the Constitution of the United States."

There is no such error.

This is not a case of a voluntary and free association for the purpose of making savings and for the benefit of the employees, workmen, and clerks of the corporation. Their consent counts for nothing. It does not settle or determine anything. The workers are forced members and not free contracting parties. In our view, this is one of the situations which the act in question has foreseen and sought to prevent by imposing penalties in a proper case. In this connection the declaration of this court in *People* v. *P. R. American Tobacco Co., supra,* should be recalled to mind:

"It clearly appears from the act that its principal purpose was to secure the wages of the laborer by preventing any combination whereby they might be diminished. . . ." ·

It is true that the Constitution of the United States, as well as our Organic Act, forbids the enactment of any law interfering with the liberty of contract. But in the case at bar there is no true contract between the workman and the corporation; there is a real constraint. The wage-earner must submit to a deduction from his wages; this is the true import of the undertaking.

In the brief of The People important citations are made, among which the one most applicable to the case at bar is the decision in *Baltimore and Ohio S. W. R. Co.* v. *Baily,* 99 Ohio 312, 124 N. E. 195; 197, in which the court said:

"The emphasis placed by the court in P., C., C. & St. L. Ry. Co. v. Cox, supra, upon the fact that the contract of the plaintiff employé

in that case was made voluntarily, and with full knowledge of the character and effect of the contract he was assuming, raises a distinct implication that the conclusion announced was as far as the court felt that it was justified in going in the case then before it. There was not applied in that case any retroactive or ex post facto law or adjudication.

"Moreover, even if an involuntary relief association had been permitted to conduct its operations prior to the passage of these statutes, that would not justify their continuance thereafter, nor render the statutes invalid or inoperative as to such association. Contracts and undertakings of the nature of those here in question, made by such associations, which fall within the inhibition of statutes afterwards passed by the General Assembly in the exercise of its police power, would thereby become ineffective. L. & N. R. Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L.R.A. (N, S.) 671, and P., B. & W. R. Co. v. Schubert, 224 U. S. 603, 32 Sup. Ct. 589, 56 L. Ed. 911."

None of the errors assigned by the appellant exist.

The judgment appealed from must be affirmed.

Mr. Justice Wolf, dissenting.

The ground of my dissent is that the title of the act, as passed by the Legislature, gave no indication that the defendant could be subjected to a penal sanction if in the interest or supposed interest of its employees it retained a part of their wages. The information charged that the defendant deducted money from the wages of a particular employee to be paid to others. Necessarily, if the defendant had known that an act containing such a sanction was about to be passed, it might have urged upon the Legislature the inadvisability of the passage.

As the decisions say, the title of an act should be a signpost of its contents. The title was "An Act Relative to Labor Contracts". The field of labor contracts is very broad and it seems highly improbable, if not impossible, that any employer of labor would have notice direct or implied, that the Legislature was about to forbid the deduction of a

quota from the wages and hence the accumulation of a fund in the interest of the employees.

We have before us a case where the employer nominally at least, is seeking to take care of his employees. Perhaps a majority, if not a great majority, of the latter would be willing that the fund should be created, and all of them should have been given some indication of the purpose of the Legislature. "Contracts relative to labor" very remotely indeed, if at all, refer to the deduction in question. Labor contracts ordinarily have a different connotation.

It is perhaps part of the same theme, but I doubt too if the act in connection with its title was a sufficient definition or denouncement of the *malum prohibitum.*

This was an act which in 1917 Governor Yager did not approve. It was the opinion of the Governor or the Attorney General, that the act never became a law; that it had been made the subject of a pocket veto. By a decision of a majority of this court, with the dissent of the writer, an act similarly not approved was declared to be a law. *Municipality of Quebradillas* v. *Executive Secretary,* 27 P.R.R. 138. All the acts which were intended to be vetoed were subsequently placed in a pamphlet with the following legend on the front page: "Being certified transcripts of the originals of certain Laws and Regulations promulgated and published in virtue of a decision of the Supreme Court of Porto Rico, dated the 11th of March, 1919".

Now, while I have taken part without further dissent in several cases, yet I am referring to my previous dissent for two reasons: Since the opinion of this court was written, the Supreme Court of the United States in *The Pocket Veto Case,* 279 U. S. 655, has, to my way of thinking, shown that these acts, if no principle of *stare decisis* is involved, never became laws. In the national case the return of the bill was prevented by the adjournment from one session to another. In the local case the adjournment was for 70 days. In either case the return was prevented. My other reason is that it

might have even been supposed that the Governor advised by his attorney general, attempted to defeat this project, perhaps among other reasons, because of the insufficient title. My hesitation in expressing these doubts is the length of time that has elapsed since the acts were promulgated, and the fact that the appellant has not complained of the invalidity of the act on this ground.

Because of the insufficient title as a fundamental defect, I refrain from considering the other errors assigned.