(No. 25633.—

THE PEOPLE *ex rel.* Harry Gramlich *et al.* Appellants, *vs.* THE CITY OF PEORIA *et al.* Appellees.

*Opinion filed October 11, 1940.*

314

LONDRIGAN & LONDRIGAN, and GIFFIN, LINDNER, NEW-
KIRK & JONES, for appellants.

WILLIAM L. EAGLETON, and MICHAEL A. SHORE, for
appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Relators instituted a *mandamus* action in the circuit
court of Peoria county to command the officers of the city
to appropriate for and pay certain wages relators claimed
to be due them as firemen of the city under the Firemens'
Minimum Wage act. (Ill. Rev. Stat. 1939, chap. 24, par.
860c *et seq.*) Relators alleged the monthly wages which
had been paid were less than the amount specified in the act
as a minimum wage and this action was to compel payment
of the difference between the amount paid and the minimum
as provided by the act. The original act became effective
July 13, 1937, and the amendatory act, which provides for
an additional tax and the adoption of the act by a referen-
dum, went into effect July 21, 1939. (Ill. Rev. Stat. 1939,

chap. 24, par. 860e, *et seq.*) Relators contended the amend-
atory act was unconstitutional and asked relief to include
the unpaid wages which accrued between July 13, 1937,
and January 1, 1940. Appellees moved to strike that part
of relators' petition which attacked the validity of the
amendatory act and answered the remainder, setting up
facts which they claimed supported their theory of the in-
validity of the original act; they also contended *mandamus*
was not the proper remedy and that the action was barred
by *laches*. The court held both the original and amendatory
acts constitutional and awarded a writ to include wages
accruing between July 13, 1937, and July 21, 1939.

Relators appealed from that part of the order which held
the amendatory act constitutional and the validity of the
amendatory act is the sole question presented on the direct
appeal. Appellees filed a cross-appeal from the remainder
of the order, thereby presenting questions as to the validity
of the original act, the right of relators to relief by *man-
damus* and whether the action was barred by *laches*.

Relators contend that section 4 of the amendatory act
amended section 2 of the original act and, therefore, con-
travenes that part of section 13 of article 4 of the constitu-
tion which provides: "No law shall be revived or amended
by reference to its title only, but the law revived, or the
section amended, shall be inserted at length in the new act."

The title of the Firemen's Minimum Wage act is "An
act to provide for and fix the salaries of firemen in certain
cities, villages and incorporated towns." It contains two
sections, the first of which defines who are firemen and
included in the provisions of the act. The second section
provides the salary to be paid a fireman shall not be less
than $150 per month in cities, villages and incorporated
towns having a population of 10,000 or more, but less than
25,000; $175 per month in municipalities having a popula-
tion of 25,000 or more, but less than 150,000, and that it
shall not apply to special firemen temporarily employed.

The title of the amendatory act is "An act to add sections 3 and 4 to 'An act to provide for and fix the salaries of firemen in certain cities, villages and incorporated towns.'" Section 1 provides that the added sections 3 and 4 "shall read as follows." The substance of section 3 is that any city, village or incorporated town which adopts the act may levy a tax to provide revenue for the purpose of paying the salary of firemen in such cities, villages and incorporated towns. The tax so authorized is to be in addition to all taxes previously authorized by law to be levied and collected in such municipalities. Section 4 provides: "This act shall become inoperative upon the effective date of this amendatory act and shall have no further effect in any city, village or incorporated town unless adopted therein as hereinafter provided." Then follows provision for the adoption of the act by a referendum.

Whether the amendatory act amends prior acts is to be determined not alone by the title, or whether the act purports to be an amendment of existing laws, but by its effect upon prior laws and an examination and comparison of its provisions with the prior law left in force. (*People* v. *Knopf*, 183 Ill. 410; *Badenoch* v. *City of Chicago*, 222 id. 71; *Michaels* v. *Hill*, 328 id. 11.) This same principle is applicable whether the amendatory act purports to be an independent act or to be an act to amend another act by the adding of a new section. (*Lyons* v. *Police Pension Board*, 255 Ill. 139.) If the amendatory act is complete in itself, constituting an entire act of legislation on the subject with which it purports to deal, it is to be deemed good and is not subject to the constitutional provision notwithstanding it may repeal by implication or modify the provisions of the prior law. If the amendatory act merely amends the old law by intermingling new and different provisions or by adding new provisions so as to create out of the old act and the new, when taken together, a complete act and leaves it in such condition that the old act must be

read with the new to determine its provisions and meaning, then the act is amendatory of the old law, and the constitutional provision requires that the law so amended be inserted at length in the new act. *Bishop* v. *Chicago Railways Co.* 303 Ill. 273; *Board of Education* v. *Haworth,* 274 id. 538.

The subject matter of the original act was to provide a minimum wage to be paid firemen in cities coming within a specified class based upon population. It became effective upon its passage and approval. The effect of section 4 was to suspend section 2 until a condition imposed by section 4 should be complied with, namely, the adoption of the act by a referendum. Section 4 is meaningless unless reference is made to section 2 of the original act. Section 4 makes no provision for a minimum wage to be paid firemen and contains no classifications of cities to which the act is applicable. Standing alone, the amendatory act merely provides for a referendum and does not specify the subject matter to which it refers. It can only be traced through the sentences above referred to from section 4. The words "this act," as used therein, obviously refer to both the original and amendatory acts. The purpose of the provision quoted from section 13 of article 4 of the constitution was to avoid the necessity of having to make reference to a prior law to determine and give meaning to an amendatory act.

The method of amendment followed in this case is similar to the one considered in *Lyons* v. *Police Pension Board, supra.* In that case the amendment was made by the adding of a new section to the Police Pension Fund act. It extended the benefits of the act to include police matrons in the police departments upon the terms specified in the additional section. Section 3 of the original act prescribed the rules of eligibility for benefits under the law. It was held the amendatory act fixing the qualifications of police matrons for the benefits was an amendment of section 3 of

the original act and came within the prohibition of section 13 of article 4 of the constitution.

In *Nelson* v. *Hoffman,* 314 Ill. 616, the act under consideration purported to amend the Mortgage act by adding a section. The prior law provided that a chattel mortgage acknowledged and recorded in accordance with the provisions of the act would, if *bona fide,* become good and valid against everyone from the time of filing for record. The amendatory section provided that such mortgage was good and valid from the time of filing for record against everyone, subject, however, that it was not good against the creditors of the mortgagor unless filed for record within ten days after its execution. The section added was held to be amendatory to the previous law and unconstitutional. To the same effect are *People* v. *Stevenson,* 272 Ill. 325, and *Galpin* v. *City of Chicago,* 269 id. 27.

Appellees rely upon *People* v. *Gaylord Building Corp.* 369 Ill. 371, *People* v. *Ottman,* 353 id. 427, and *People* v. *Exton,* 298 id. 119, as sustaining their position in this case. Those cases are distinguishable from the instant case in that the amendatory act in each of the cases relied upon was complete in itself and did not amend any prior law. The amendatory act effective July 21, 1939, violates section 13 of article 4 of the constitution.

In view of the conclusion reached on the invalidity of the amendatory act it is not necessary to consider relators' contention that it violates section 22 of article 4 of the State constitution and section 1 of the fourteenth amendment to the Federal constitution.

Appellees urge the original act is unconstitutional in that it creates a corporate debt of the city without its consent and, therefore, contravenes section 10 of article 9 of the constitution; that it is an unreasonable, arbitrary and excessive exercise of the police power as applied to the city of Peoria, and is special legislation and contrary to section 22 of article 4 of the constitution. These objections

are the same that the city of Peoria urged as a defendant in *Littell* v. *City of Peoria, post,* p. 344, in its attack upon the validity of the Policemen's Minimum Wage act. An opinion has been filed in that case at the present term. A part of these objections were also considered in *People* v. *City of Springfield,* 370 Ill. 541. The holdings in the *Littell* and *Springfield cases* are controlling on these questions and will not be repeated.

Appellees' contention that the original act violates section 13 of article 4 of the constitution is based upon the claim that the act in question amends the following sections of the Cities and Villages act; section 1 of article 5, (Ill. Rev. Stat. 1939, chap. 24, par. 65,) which empowers cities, acting through their councils, to control finances and properties of the corporation; section 64 of article 5, (Ill. Rev. Stat. 1939, chap. 24, par. 65.63,) which authorizes cities and villages to erect enginehouses, provide fire equipment and adopt regulatory measures, and section 15 of article 6, (Ill. Rev. Stat. 1939, chap. 24, par. 98,) which authorizes the fixing of salaries and compensation.

The original act is a complete, independent act in itself. Its meaning is clear and does not purport to amend a prior law either by title or by words. To determine its meaning it is not necessary to refer to the prior acts nor is it necessary to make such reference to determine the meaning of the words employed. The fact that it modifies the power of a city to control its finances as granted by paragraph 65, or the authority conferred by the other sections of the Cities and Villages act referred to, does not bring it within the prohibitions of the constitutional provision. (*People* v. *Ladwig,* 365 Ill. 574; *Bishop* v. *Chicago Railways Co. supra; People* v. *Wright,* 70 Ill. 388.) The act of 1937 does not violate section 13 of article 4 of the constitution.

Appellees contend the relators have not shown a clear legal right to a writ and that in the exercise of the discretion with which courts are vested in actions of *mandamus,*

the writ should have been denied. It was alleged in the petition, and admitted by answer, that an act entitled "An act permitting cities and villages containing less than 500,000 population to levy a tax for fire protection," approved in 1929, was adopted by referendum April 12, 1938. It was admitted that pursuant to such statute the appropriation ordinance adopted in February, 1938, contained an appropriation of $165,000 for the fire protection tax fund, conditioned upon the adoption of the act, and after the act was adopted the city levied in accordance with the appropriation ordinance. The pleadings also admit the appropriation ordinance passed in February, 1939, contained an item (included under the authority of the act) of $158,900. No facts were alleged showing a more detailed appropriation of the money going into said fund and it is not shown the fund was not available for the payment of the increased wages in accordance with the Firemen's Minimum Wage act. If all the firemen of the city were paid in accordance with the Firemen's Minimum Wage act, the total annual increase would not exceed $55,000.

A city is liable for its indebtedness and it is the duty of the city authorities to make proper appropriation for the payment of the same. If it fails in this duty the courts, upon the proper showing, will grant the creditors relief. If an application for relief is made and it is found that the claim is a proper debt against the city, the burden is upon the city to show that it is doing all in its power to pay the indebtedness. (*City of Chicago* v. *People,* 215 Ill. 235.) In this case the defendants did not set out in detail the items properly chargeable against the fire protection tax fund, nor did they make any reference to any receipts from other sources or expenditures chargeable against such other sources when received. Where a clear legal right to a writ of *mandamus* is shown the applicant is entitled to its issuance, and, under the facts presented, we are satisfied the relators are entitled to the writ.

The final contention of appellees that relators' action was barred by *laches* can not be sustained for it does not appear that any delay or neglect on the part of relators in bringing the action has misled appellees or caused them to adopt a course different from what they would have otherwise taken.

The judgment of the circuit court is affirmed as to that part of the order which directed the issuance of the writ of *mandamus* to cover the wages accrued under the Firemen's Minimum Wage act between the date of July 13, 1937, and July 21, 1939, and reversed as to that part of the order which denied the writ for wages accruing after July 21, 1939, and before January 1, 1940. The cause is remanded, with directions to issue the writ of *mandamus* in accordance with the views expressed.

*Affirmed in part, reversed in part,*
*and remanded, with directions.*